# Case No. 255.

## ALMEIDA v. CERTAIN SLAVES.

[5 Hall, Law J. 459;[1] 5 Hughes, 55; 3 Wheeler, Crim. Cas. 538.]

District Court, D. South Carolina. July, 1814.

### SLAVES—PRIZE—PRISONERS OF WAR.

1. Slaves captured in time of war. cannot be libelled as prize, nor will the district court of the United States consider them as prisoners of war.

2. The court considers the disposition of them as a matter of state [policy,] in which it is not fit that the judiciary should interfere.

[Libel by Joseph Almeida, captain of the American privateer schooner Caroline, against certain slaves. Dismissed.]

DRAYTON, District Judge. The libel in this case alleges, that during the cruise of said privateer, on the high seas, she captured certain slaves, "the property of the king of the United Kingdom of Great Britain and Ireland, and the dependencies thereof; or, of the subjects of the said king." That in and by a certain act of the congress of the United States, passed the 26th June, 1812, entitled "An act concerning letters of marque, prizes, and prize goods," it is among other things enacted, that all captures of vessels, and property, shall be forfeited, and accrue to the owners, officers,

[1][Reported by John E. Hall. Esq., from the manuscript communicated by Hon. John Drayton, District Judge.]

and crew of the vessels, by which such prizes shall be made; reserving to the United States, two per centum, on the net amount of the moneys arising from such captures, and concludes with the regular prayer of condemnation.

In behalf of the United States, a claim was interposed by the district attorney, for the said slaves, as prisoners of war, or otherwise, to them the said United States belonging; denying the right of the said Joseph Almeida, to the said slaves, as prize of war; and concludes with praying, that the said slaves may be adjudged and delivered to them as prisoners of war, or otherwise, and that the costs of their claim be allowed. This is one of the new and important questions, arising from the present war in which the United States of America are engaged with Great Britain. The court has, heretofore, not proceeded to condemnation of slaves, brought in as prize of war; but, has ordered their confinement as prisoners. And in some cases, they have been received as such, by the British authorities resident in this city. The interest of parties, however, require at this time, a formal decision on the point of prize; to obtain which, the libel, in this case has been filed.

It is contended by Hayne, for the libellant, that by a true construction of the rights of war, and particularly in pursuance of the prize act of the United States, specially referred to in the libel, all captures and prizes of vessels and property, shall be forfeited and accrue to the owners, officers and crews of the vessels making such captures. That negroes and persons of color, held in slavery by the British are as much slaves, as those held in slavery by our own citizens. That they are not real, but personal property; considered as assets in sales, and in distribution of estates. And therefore, they come within the meaning of the word property, as mentioned in the fourth section of the said act; (2 Laws U. S. 240, [2 Stat. 759:]) and, consequently, are liable to condemnation as prize. That the law must be so construed, not only as respects the public interests, and the intention of congress in passing the prize act; but, as protecting the rights of all concerned in privateering; and, as encouraging the exertions of our citizens to attack and injure the enemy. And more particularly so, in retributive justice; as the enemy have taken so many slaves belonging to our citizens, and have appropriated them to their own use, as prize-of war.

On the part of the United States, it is insisted, by Parker, (district attorney) that the right of condemning the slaves as prize of war, does not attach in favor of libellants; but, that they must be considered as prisoners of war or otherwise, in behalf of the United States. Because other than such a construction would be at variance with the

act of congress, passed on the 2d of March, 1807, prohibiting importation of slaves. 8 Laws U. S. 262, [2 Stat. 426.] That slaves cannot be considered as property, under that term, in the prize act; because, it could not have been the intention of congress to consider them as prize, springing out of the events of the war. For, were this the meaning of the legislature, the act prohibiting the importation of slaves would have been repealed, so far as it had any collision with the war or the prize acts. I have never had any doubt on this subject. But, as those interested in such captures appear not satisfied, by a non-judicial divestment of what they claim as a right, it is better that the question should be, at length, seriously brought before me.

Did the question turn upon the meaning of the word property, as relating to slaves, something might be said in support of such doctrine; not only, upon the principle of the civil law which considers slaves not as persons but as things (1 Brown, Civil Law, 100, 101, 103,) but also, from the custom, usage and meaning in law, of those of our states, possessing this property. But, as only one portion of our union, permits this property in slaves, it cannot be supposed the other would in a general law, intend it was to be considered as prize. These two different interests are represented in congress; it is the united votes of that body, which have passed the prohibitory act. And it is but reasonable to believe those not permitting slavery, did not, and would not, concur in such a construction, as is contended for, by libellant. But there are stronger reasons why a condemnation in favor of the captors, should not be decreed. In the first place, the act prohibiting the importation of slaves, was made by congress, with the evident intention of forever thereafter preventing this importation. This act was passed to take effect at the earliest period (1st January, 1808,) at which the constitution of the United States permitted congress to prohibit their importation. For until that time, the states interested in negro importation would not have been controlled but by their own acts. And congress having so early used such prohibitory power evinces their disapprobation of such commerce, and of adding to the number of slaves in the Union; and of course, their determination to maintain such prohibition strictly. It is true, this law was made in time of peace, it is not a war measure. But, it does not thence follow that it is to be superseded or repealed by a declaration of war; or by the passage of a prize act. It does not follow that an act passed as a general and standing municipal law shall be repealed by a prize act, brought into existence for the purposes of a particular war, unless such repeal manifestly appears. It would argue a want of caution in our legislature, which ought not to be supposed. It enacts "That from and after the 1st day of January, 1808,

it shall not be lawful to import or bring into the United States, or the territories thereof, from any foreign kingdom, place, or country, any negro, mulatto, or person of color, with intent to hold, sell, or dispose of such negro, mulatto, or person of color, as a slave, or to be held to service or labor." This section, therefore, is general; it applies to all vessels, whether of war or otherwise. For, "ubi lex non distinguit, 'nec nos distinguere debemus." It is also imperative, being without any condition, or exception. This further appears by perusing the different sections of the act—as where the public interests required, the general bearing of the first section should be controlled or mitigated, there the act is not silent, but declares in what manner it shall be done. So by the 7th section permitting the capture, and bringing in of any ship or vessel hovering on our coasts, having on board any negro, mulatto, or person of color, for the purpose of selling them as slaves; or with the intent to land the same, in any port or place within the jurisdiction of the United States. 8 Laws U. S. 266, [2 Stat. 428.] But even in this case, those persons are not to be sold; they are to be disposed of otherwise, as therein is directed. The party capturing receives nothing from the proceeds of such negroes, mulattoes, or persons of color; his emoluments arise only from the proceeds of the ship or vessel, her tackle, apparel and furniture, and the goods and effects on board; and this under a special proviso, that to entitle him to such reward, he shall "keep safe every negro, mulatto or person of color, found on board of any ship or vessel, so seized, taken or brought into port for condemnation, and shall deliver every such negro, mulatto or person of color, to such person or persons as shall be appointed by the respective states, to receive them, etc." Hence, as respects the rights and interest vested by the prize act, congress has legislated with caution. When to give energy to that act, that body meant former acts, or parts of acts to be repealed, the same has been expressly enacted; it has not been left to a court, to advance one step farther than was intended by its decreeing a virtual repeal. For, it is only under such a decree, or by such a construction, that the cause of the libellant can be sustained. This is evident, by referring to the 14th and 16th sections of the prize act; which for the purpose of giving free scope to its operations, expressly repeal so much of the non-importation and embargo laws as relate to prize goods, or private armed vessels; but, nothing is said as to the prohibitory slave act. It follows then, that congress did not intend to repeal such act, as relating to prize of war; as "Exceptio probat regulam, in non exceptis." And slaves are not considered therein under the term property, or as goods and effects as is evident by the remunerating clause of the prohibiting slave act, (section 7,) before men-

tioned. Congress has therein clearly expressed its opinion on this point; and it is not then for this court to suppose a different construction. I am, therefore, of opinion, the negroes or persons of color, so libelled, cannot be condemned as prize to the captors.

The only question now remaining for consideration, is whether the claim in behalf of the United States, for the same as prisoners of war or otherwise, shall be sustained, or, if not sustained, whether this court will in any, and what manner, pronounce judgment in the premises? As to the claim of prisoners of war, I do not think it proper to decide thereon. It appears to me, as the laws of the United States are silent on the subject, it becomes a matter of state; respecting which it is not for the judiciary to determine—the right to do so remaining with the government of the United States. Because these persons may have been heretofore informally considered as prisoners, it is no reason this court should now decree them to be prisoners of war. And on this point there is much similarity, with the reasoning and cases in law, respecting head money. In which the court of admiralty pronounces not whether due, but only the number of men taken; leaving the remuneration to the sovereign power. [Le Francha,] 1 C. Rob. Adm. 157.

Under these impressions, I do adjudge and decree, that the libel be dismissed with costs. And that the claim of the United States be sustained, so far as to detain the said negroes, mulattoes or persons of color, in the possession and custody of the marshal; subject to such disposition and uses, in favor of the United States, whether as prisoners of war, as prize to the United States, or otherwise, as shall lawfully be declared, and directed in the premises. And lastly, I adjudge and decree that the libellant pay also the costs of the claim in this case.